UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 10-11131-RWZ


JUAN BETANCUR
and ZENILTON COSTA

v.

DAVID ROARK, *et al.*

MEMORANDUM AND ORDER

October 12, 2012


ZOBEL, D.J.

　　This suit, brought in 2010 by ten plaintiffs, challenges immigration decisions by the United States Citizenship and Immigration Services ("USCIS"). Eight of those plaintiffs have since withdrawn from this action after USCIS voluntarily granted them relief. Defendants, all federal officials, move for summary judgment as to the remaining two plaintiffs, Juan Betancur ("Betancur") and Zenilton Costa ("Costa").

**I.    Background**

　　A brief review of the employment-based immigration system is necessary to understand this case. Under 8 U.S.C. § 1153(b)(3), approximately 40,000 visas are available each year for immigrant "[s]killed workers, professionals, and other workers." Id. Obtaining permanent residency through one of these visas normally requires following a three-step process. First, the immigrant's prospective employer obtains a

certification from the Department of Labor showing that there are no able and willing United States workers available for the position, and that hiring the immigrant will not adversely affect the wages and working conditions of similarly employed workers here. 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A)(I). Employers formerly applied for those certifications using Form ETA-750.[1] That form has two parts: Form ETA-750A, on which the employer describes the job offered, and Form ETA-750B, on which the prospective employee describes his qualifications for that job. Second, after the Department of Labor issues the required labor certification, the employer files a Form I-140 petition with USCIS to obtain an employment-based visa for the immigrant. 8 C.F.R. § 204.5(a), (c). Because the employer files the I-140, the employer is known in this context as the "petitioner," while the immigrant to be employed is the "beneficiary." Third, if USCIS approves the I-140, the immigrant may apply to become a permanent resident using Form I-485. The immigrant's I-485 may be submitted concurrently with the I-140 petition.

As detailed below, Betancur and Costa each sought permanent residency through this process. They were initially represented by immigration attorney John Dvorak ("Dvorak"). Labor certifications and I-140s were approved for both Betancur and Costa, and each filed for permanent residency on I-485s. But before their I-485s were approved, USCIS started to suspect Dvorak of obtaining visas for some clients by

---

[1] Today, the Department of Labor uses a new labor certification program which requires employers to file a Form ETA-9089. See 20 C.F.R. § 656.17(a).

fraud.[2] It began reviewing the visas already issued to Dvorak's clients, including the I-140s issued for Betancur and Costa. Following that review, USCIS eventually revoked plaintiffs' ETA-750s and I-140s on various grounds. Each plaintiff now challenges the revocation of his labor certification and visa.

The precise factual history for each plaintiff follows.

**A.      Betancur**

Betancur was born in Colombia in 1975. He entered the United States without inspection in 1997.

His employment-based visa process began on April 30, 2001, when Calla Lily Caterers ("Calla Lily") filed an ETA-750 seeking to employ Betancur as a cook. Calla Lily stated on its ETA-750A that the minimum qualifications necessary were two years' experience in the job; Betancur stated on his ETA-750B that he had been employed from February 1992 through November 1996 as a cook for the Charlot Restaurant in Donmatías, Colombia.[3] On May 10, 2002, the ETA-750 was approved and the Department of Labor issued a labor certification.

On June 24, 2002, Calla Lily filed an I-140 petition to obtain an employment-based skilled worker visa for Betancur. It submitted along with that petition a letter from Walter Madrid of Donmatías, Colombia, who identified himself as the owner of the

---

[2] Dvorak was subsequently suspended for three years from practice before the Board of Immigration Appeals, the Immigration Courts, and the Department of Homeland Security.

[3] The ETA-750B also indicates that a "letter of prior experience" is attached. Betancur R. at 153. No copy of that letter is included in the record, unless it is the same letter that was attached to the I-140 application discussed next.

Charlot Restaurant. The letter certified that Betancur had worked as a chef at the Charlot Restaurant from February 8, 1992 through November 13, 1996. On February 18, 2003, the I-140 was approved.

On March 28, 2003, based on his approved I-140, Betancur filed an I-485 to adjust his status from an employment-based visa to lawful permanent residency. He obtained an interview on his I-485 application on July 12, 2005. At that point, Betancur submitted additional documentation showing that he was now working for Choice Catering & Events ("Choice Catering"), and had been since 2004. He submitted further documentation showing that he had also worked for Filene's in 2004.

Because visa applications are oversubscribed—more applications have been submitted than there are visas available under the statute—USCIS held Betancur's I-485 application in abeyance for more than three years after it was initially filed. On June 8, 2006, Betancur's application finally reached the top of the pile. However, USCIS had begun investigating Betancur's attorney Dvorak in 2005; because USCIS had found fraud in other petitions filed by Dvorak, it decided to investigate Betancur's file more thoroughly before issuing him an I-485. It therefore kept Betancur's I-485 application on hold while reviewing his I-140.

On February 12, 2009, nearly six years after Betancur's I-485 application was filed, the USCIS Texas Service Center issued a Notice of Intent to Revoke ("NOIR") to Calla Lily. The NOIR informed Calla Lily that USCIS planned to revoke the I-140 issued for Betancur, and gave Calla Lily thirty days in which to respond. Dvorak responded to the NOIR on February 25, 2009, providing (among other documentation): (1) a

statement that Betancur was no longer employed by Calla Lily, but instead had "similar employment," Docket # 38 ("Betancur R.") at 167; (2) a letter from Choice Catering indicating that Betancur was a full-time employee in the "production kitchen" and also worked at off-premise events, id. at 168;[4] (3) a notarized affidavit by Betancur that he had worked as a chef at the Charlot Restaurant in Donmatías, Colombia from February 8, 1992 through November 13, 1996; and (4) a second letter from Walter Madrid, owner of the Charlot Restaurant, again certifying that Betancur had worked there as a chef from February 8, 1992 through November 13, 1996.

On May 18, 2009, the USCIS Texas Service Center revoked the I-140 issued for Betancur. A few weeks later, on June 4, immigration attorney Andrew Howard ("Howard") entered a notice of appearance on behalf of both Betancur and Calla Lily, and filed an appeal of the I-140 revocation with USCIS's Administrative Appeals Office ("the AAO").

On November 19, 2010, the AAO issued a Request for Evidence and Notice of Derogatory Information (RFE/NDI) to Robert Pelletier ("Pelletier") as owner of Calla Lily. The RFE/NDI pointed out particular discrepancies in Betancur's file and requested that Calla Lily respond and provide further documentation within thirty days. The AAO sent a similar RFE/NDI directly to Betancur on the same date. Howard responded on

---

[4] This letter indicates that Choice Catering was "formally Calla Lily Caterers" and that Betancur had worked for them since July 1999. Betancur R. at 168. It is signed by Robert E. Pelletier, Jr., apparently the same Rob Pelletier who in 2001 signed Calla Lily's letter demonstrating its ability to pay Betancur's salary. Id. at 183. The court wonders whether "formally" should read "formerly." In any case, as discussed below, the precise relationship between Calla Lily and Choice Catering is not relevant.

behalf of Calla Lily, Pelletier, and Betancur on December 18, 2010. He first noted that

Calla Lily was dissolved in 2007. He then argued that the AAO was required to rule on

the validity of the USCIS Texas Service Center's original NOIR before requesting new

evidence, and therefore declined to produce further documentation in response to the

AAO's request. For Betancur, he argued that as beneficiary of the I-140 Betancur was

not a party to the present appeal, and so again declined to submit further evidence.

The AAO issued its decision on January 14, 2011. Reviewing the record de

novo, it concluded that the USCIS Texas Service Center's original NOIR was too vague

to give Calla Lily a meaningful opportunity to respond. It also concluded that the

original decision to revoke the I-140 was based on a legal error. Therefore, it withdrew

the initial revocation decision. However, on review of the whole record, the AAO found

that Betancur's I-140 should nevertheless be revoked because (1) Calla Lily no longer

existed; and (2) Betancur did not have the necessary work experience. It also found

that Betancur had knowingly misrepresented his work experience on his ETA-750B

filing, and so it invalidated the ETA-750 labor certification. The AAO's decision was the

final agency action in Betancur's case.

### B. Costa

Costa was born in Brazil in 1964 and admitted to the United States on a travel

visa on March 22, 1996. However, he failed to depart when that travel visa expired.

On April 30, 2001, an ETA-750 was filed by an employer identified as Pipinelle's,

Inc. ("Pipinelle's"), seeking to employ Costa as a cook. The form was signed for

Pipinelle's with the name "Ron Bucchanio." The ETA-750 was approved on October 24,

2002.

In November 2002, Dvorak filed a I-140 petition on behalf of Pipinelle's to obtain an employment-based skilled worker visa for Costa. Attached to that I-140 was a Form G-28, providing notice that Dvorak would appear to represent Costa and Pipinelle's. This form was also signed for Pipinelle's with the name "Ron Bucchanio." Dvorak concurrently filed an I-485 petition on behalf of Costa to adjust Costa's status to lawful permanent resident once the I-140 was approved.

On September 22, 2004, the I-140 for Costa was approved. However, because the visa applications were oversubscribed, Costa's I-485 was held in abeyance. While Costa's I-485 was pending, USCIS began investigating Dvorak and reviewing his clients' petitions. It therefore kept Costa's I-485 on hold while reviewing his I-140.

On February 3, 2009, the USCIS Texas Service Center issued an NOIR to Pipinelle's. Dvorak responded on February 20, 2009, and included (1) a statement that Costa was no longer employed by Pipinelle's but instead had similar employment; and (2) a letter from Restaurant 45 in Medway, Massachusetts, indicating that Costa had been employed as a cook there since December 2006.

On May 12, 2009, the USCIS Texas Service Center issued a Notice of Revocation of the I-140 issued for Costa, accompanied by a finding that Pipinelle's had engaged in fraud and willful misrepresentation in the application process. A few weeks later, on May 28, Howard entered a notice of appearance on behalf of both Costa and Pipinelle's and filed an appeal of the I-140 revocation with the AAO.

On November 19, 2010, the AAO issued an RFE/NDI to Ron Bucchanio

7

("Bucchanio") for Pipinelle's. The RFE/NDI pointed out particular discrepancies in Costa's file and requested that Bucchanio submit further evidence addressing them. In particular, the AAO noted that the "Ron Bucchanio" signatures on the ETA-750, G-28, and I-140 forms did not match. The AAO also sent a similar RFE/NDI directly to Costa on the same date.

On November 29, 2010, Ron Bucchanio sent the AAO a handwritten letter indicating that he sold Pipinelle's in November 2006. Bucchanio also indicated that the "Ron Bucchanio" signatures on the ETA-750 and G-28 forms were not, in fact, his signature.[5] Costa submitted no response to the RFE/NDI.

The AAO issued its decision on May 3, 2011. Reviewing the record de novo, it concluded that the USCIS Texas Service Center's decision to revoke Costa's I-140 was not supported by the record. Therefore, it withdrew the initial revocation decision, as well as the finding of fraud and willful misrepresentation. However, on review of the whole record, the AAO found that Costa's I-140 and ETA-750 should nevertheless be invalidated because (1) Pipinelle's did not demonstrate a continuing ability to pay Costa; (2) Pipinelle's was sold in 2006, and there was no evidence that Costa could still work as a cook there; and (3) the signatures on the ETA-750 and G-28 accompanying the I-140 petition were forged, which invalidated the ETA-750 labor certification and so made the I-140 petition deficient. This AAO decision was the final agency action in Costa's case.

---

[5] He conveyed that information by highlighting the false signatures. The highlighting is not visible on the copy of the administrative record filed with the court. However, the parties apparently agree that Bucchanio highlighted the relevant signatures on the ETA-750 and the G-28.

## II.     Legal Standard

Under the Administrative Procedure Act ("APA"), a federal court may set aside final agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under this standard "is highly deferential, and the agency's actions are presumed to be valid." River St. Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (2009). The court "is not to substitute its judgment for that of the agency"; it should only insist that the agency "examine the relevant data and articulate a satisfactory explanation for its action." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983); see also FCC v. Fox Television Stations, 556 U.S. 502, 513 (2009). If the agency's actions are supported by a rational basis, the court must affirm them. River St. Donuts, 558 F.3d at 114.

## III.    Analysis

Because the AAO's decisions were the final agency actions in each case, those are the decisions the court reviews. See 5 U.S.C. § 704.

### A.     Betancur

In its final decision on Betancur's case, the AAO withdrew the previous decision by the USCIS Texas Service Center to revoke Betancur's I-140. However, it determined that the I-140 was nevertheless invalid for two reasons:  (1) because Calla Lily was no longer in business; and (2) because Betancur did not have the necessary work experience. The court will address each of these reasons in turn.

#### 1. Calla Lily's Existence

The AAO observed in its investigation that Calla Lily was administratively

dissolved on May 31, 2007. That is, Calla Lily ceased to exist about five years after it

filed Betancur's I-140, and more than four years after Betancur's I-140 was approved.

Because Calla Lily no longer exists, it cannot hire a foreign worker, and so the AAO

concluded that its I-140 petition "has become moot." Betancur R. at 41. In support of

this conclusion, the AAO cited 8 C.F.R. 205.1(a)(iii)(D), an agency regulation providing

that approval of an employment-based I-140 is subject to automatic revocation if the

sponsoring employer's business is terminated. The AAO found that Betancur's present

employment with Choice Catering could not save the I-140, because Choice Catering

"did not appear to be the successor-in-interest" to Calla Lily.[6] Betancur R. at 41.

The AAO decision fails to note or discuss the applicability of 8 U.S.C. § 1154(j).

That statute provides that an employment-based I-140 for an individual whose I-485

has been pending for 180 days or more "shall remain valid with respect to a new job,"

as long as the new job is "in a same or a similar occupational classification."[7] 8 U.S.C.

---

[6] The AAO stated that "the owner of Choice Catering and Events, James Little, submitted a letter claiming that Choice Catering and Events was formerly known as Calla Lily," but disregarded that letter because it found "[n]o evidence . . . has been submitted to demonstrate the veracity of Mr. Little's claim." Betancur R. at 41. The court has been unable to find the cited letter; the only letter in the record from James Little makes no such statement. On the other hand, the letter from Rob Pelletier does indicate that Calla Lily and Choice Catering are related. In any case, the precise connection between the two entities is irrelevant.

[7] The full text of the provision reads:

A petition under subsection (a)(1)(D) of this section for an individual whose application for adjustment of status pursuant to section 1255 of this title has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed.

§ 1154(j). Known as the "portability provision," this clause gives immigrants on employment-based I-140s job flexibility while their I-485s are pending, by allowing them to "port" their I-140s to new employers. The new employer is not required to be the old employer's successor in interest.

In this case, Betancur's I-140 was approved on February 18, 2003, and his I-485 was filed on March 28, 2003. One hundred and eighty days later—on September 24, 2003—Betancur's I-140 became portable, meaning it "shall remain valid" with respect to any new job in the same or similar occupation classification. This statutory command in 8 U.S.C. § 1154(j) supersedes the agency regulation in 8 C.F.R. § 205.1(a)(iii)(D) providing for automatic revocation when the original employer dissolves. The agency's determination that Calla Lily ceased to exist in 2007 thus does not provide a legal basis for revoking Betancur's I-140, regardless of whether Choice Catering is Calla Lily's successor in interest. That ground for revoking Betancur's I-140 must consequently be set aside.

There are three ways that Betancur's I-140 might still be invalid. First, the portability provision only applies if his new job is "in the same or a similar occupational classification" as his old job with Calla Lily. 8 U.S.C. § 1154(j). The record contains prima facie evidence that Betancur's job with Choice Catering is "in the same or a similar occupational classification" as his work for Calla Lily. See Betancur R. at 118

---

The citation to subsection (a)(1)(D) should refer to subsection (a)(1)(F), the subsection regarding employment-based visas. See Ravulapalli v. Napolitano, 773 F. Supp. 2d 41, 51 (D.D.C. 2011). A petition under that subsection is an employment-based I-140 petition. An application for adjustment of status pursuant to section 1255 of the relevant title is an I-485 petition.

(describing Betancur's work in the "production kitchen" at Choice Catering). However, that determination should be made by the agency in the first instance.

Second, the I-140 is invalid if it was automatically revoked by 8 C.F.R. § 205(a)(iii)(D) before it became portable under 8 U.S.C. § 1154(j). In other words, the I-140 is invalid if Calla Lily's business was terminated before September 24, 2003. However, the AAO did not determine that Calla Lily's business was terminated before that date; it only determined that Calla Lily was dissolved in 2007. If the agency believes the I-140 was automatically revoked because Calla Lily's business was terminated before September 24, 2003, it must make that finding and explain the facts on which it is based.

Third, Betancur's I-140 is invalid if it was approved incorrectly in the first place (i.e., on March 28, 2003). An I-140 can only "remain" valid under 8 U.S.C. § 1154(j) if it was valid originally. See Matter of Al Wazzan, 25 I. & N. Dec. 359 (AAO 2010). If Betancur did not have the necessary work experience—the AAO's second reason for invalidating his I-140—then his visa was invalid ab initio and so cannot be saved by 8 U.S.C. § 1154(j).

### 2. Betancur's Work Experience

Betancur stated on his ETA-750B and I-140 forms that he had more than two years' relevant work experience because he had been a cook at the Charlot Restaurant in Donmatías, Colombia from February 1992 through November 1996. The record contains his sworn and notarized affidavit attesting to those facts. It also includes two letters (dated April 19, 2001 and February 22, 2009) from Walter Madrid, owner of the

Charlot Restaurant, confirming that Betancur was employed there as he described.

The AAO found this evidence wanting. In its RFE/NDI to Betancur on November 19, 2010, it noted the following discrepancies regarding that work experience: (1) Betancur had failed to list his employment in Colombia on the Form G-325 that he submitted as part of his I-485 application; and (2) Betancur was sixteen years old in February of 1992 and thus (in the AAO's opinion) was "likely in school full-time." Betancur R. at 68. Further, the AAO noted that none of the evidence included "a specific description of the duties performed" for the Charlot Restaurant (beyond the fact that Betancur worked as a cook). Id. at 69. The AAO therefore requested that Betancur provide pay stubs, tax documents, financial statements or other evidence of payments made to Betancur by his previous employers, and (interestingly) school transcripts from 1992 to 1994.

Betancur responded by his attorney that he was "not a party to the present appeal before the AAO" and had "no standing." Betancur R. at 48. He did not submit any additional evidence, nor did Calla Lily or its former president Pelletier (to whom the AAO had also sent a similar RFE/NDI).

On these facts, the AAO determined in its final decision that Betancur "does not possess two years' work experience as a cook." Betancur R. at 46. Because that determination was arbitrary and capricious, the court sets it aside.

The AAO based its determination primarily on the fact that Betancur did not submit "pay stubs, tax documents, or other evidence of payments made to him by the claimed Colombian employer" in response to the RFE/NDI. Betancur R. at 43. As the

AAO correctly notes, such evidence "would have shed more light into the beneficiary's work experience." Id. But the mere failure to provide such further evidence cannot rationally lead to the conclusion that Betancur forged his previous work history and supporting documentation. First, Betancur's asserted work experience was as a cook in a small town in Colombia.[8] Second, that work experience took place from fourteen to eighteen years before the AAO's RFE/NDI was issued. These facts, present in the record, supply obvious and plausible reasons why Betancur might not have the "pay stubs, tax documents, or other evidence of payments" that the AAO requested. The AAO appears not to have considered these facts in its final decision.

Moreover, the RFE/NDI was issued more than seven and a half years after the I-140 was officially approved. A reasonable person in Betancur's position could easily have believed he no longer needed to keep pay stubs and tax documents from his old job in Colombia—assuming he had ever been issued such documents in the first place. The AAO's final decision does not evaluate the long delay between the initial approval of the I-140 and the subsequent RFE/NDI, nor indicate how that delay should inform its interpretation of Betancur's failure to provide further documentation.

Finally, Betancur's response to the RFE/NDI indicated that he believed he had "no standing" to provide evidence in the present action. While that belief may be

---

[8] The court takes judicial notice of the fact that Donmatías had a population of 18,722 inhabitants in 2010. See Donmatías, http://www.donmatias-antioquia.gov.co /index.shtml (click "Nuestro Municipio," then "Indicadores," then "2010") (last visited Sept. 28, 2012).

mistaken,[9] it at least provides another plausible explanation for why Betancur failed to produce further evidence in response to the RFE/NDI. The AAO's final decision did not assess the credibility of that statement, nor indicate whether it provided a believable alternative reason why Betancur failed to submit further evidence.[10]

Beyond Betancur's failure to submit further evidence, the AAO also noted two "inconsistencies" in Betancur's record, Betancur R. at 46, supporting the finding that Betancur never worked at the Charlot Restaurant. First, it noted that Betancur was "only 16 years of age in February 1992, when he claimed he began work at Charlot Restaurant." Id. at 43. The AAO's final decision does not explain why it considered this fact relevant; however, the RFE/NDI indicated that the AAO suspected Betancur was "likely in school full-time" at that age. Id. at 68. If that is the reason the AAO suspected Betancur's work history, its suspicion was arbitrary and capricious. The court takes judicial notice of the fact that in 1998, the first year for which the United Nations provides relevant data, mandatory schooling in Colombia ended at graduation from lower secondary school at age 14. See UNESCO Institute for Statistics, Beyond 20/20 WDS, http://stats.uis.unesco.org/unesco/ReportFolders/ReportFolders.aspx (click

---

[9] As beneficiary of the visa petition, Betancur apparently would not have standing to appeal the revocation of his I-140. See 8 C.F.R. 103.3(a)(1)(iii)(B). Of course, that does not in any way prevent him from submitting relevant evidence.

[10] The AAO's decision cites 8 C.F.R. § 103.2(b)(14) to find that Betancur's failure to submit requested evidence "shall be grounds for dismissing the petition." Betancur R. at 45. However, that provision by its terms only applies where the applicant or petitioner "requests a decision based on the evidence already submitted." 8 C.F.R. § 103.2(b)(14). The AAO never determined that Betancur made such a request. Cf. Khawaja v. Mueller, Civil Action No. H-11-3603, 2012 WL 1857849 (S.D. Tex. May 21, 2012) (to invoke 8 C.F.R. § 103.2(b)(14), USCIS officer made explicit finding petitioner was requesting decision based on evidence submitted).

"Education," then "Table 1") (last visited Sept. 28, 2012). And many children in Colombia leave school before that age. In 2000, nearly half a million children between eleven and fourteen years old were out of school in Colombia—that is, almost one in five Colombian children in that age group. Id. (click "Education," then "Table 7"). The fact that Betancur was sixteen years old in 1992 thus could not without more lead a rational agency to have substantial doubts about Betancur's work experience.[11]

Second, the AAO noted that Betancur had failed to indicate his former employment in Colombia on the Form G-325 that he filed with his I-485 petition. The form in question has a section reading "Applicant's Employment Last Five Years." Betancur R. at 19. Of course, Betancur was not employed at the Charlot Restaurant within the five years before he filed that form on March 28, 2003. However, in smaller type underneath that section, another box reads "Show below last occupation abroad if not shown above." Id. Thus, Betancur should indeed have indicated his employment at the Charlot Restaurant in this second box. But his failure to fill out the G-325 with surgical precision, even taken in combination with the other evidence above, is just not enough to permit a rational agency to conclude that Betancur forged his entire Colombian work history.

It is worth emphasizing that the record includes no affirmative evidence casting doubt on Betancur's work history. For instance, there is no evidence that Betancur was in fact outside Donmatías, Colombia between 1992 and 1996, or that the Charlot

---

[11] It does, however, provide another plausible reason why Betancur might not have pay stubs, tax documents, or other evidence of his earnings from that period available. Few people keep the pay stubs of their teenage years.

Restaurant denies having employed him. Betancur (and his employer) bear the burden of proof to show that Betancur was eligible for an I-140, but they need only make that showing by a preponderance of the evidence. <u>See</u> 8 U.S.C. § 1361; <u>Matter of Chawathe</u>, 25 I. & N. Dec. 369, 375-76 (AAO 2010); <u>Matter of Ho</u>, 19 I. & N. Dec. 582, 588-89. Betancur initially satisfied that burden with the letters from Charlot Restaurant and Betancur's corroborating affidavit; and the AAO's final decision does not point to any contrary piece of evidence in the record that rebuts Betancur's asserted work history.

As described above, the AAO's final decision in Betancur's case failed to "examine the relevant data and articulate a satisfactory explanation for its action." <u>Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 43. Its decision to revoke Betancur's ETA-750 and

I-140 must therefore be set aside.

Based on its conclusion that Betancur never worked at the Charlot Restaurant, the AAO found that Betancur had lied about his work history and that the two letters from the Charlot Restaurant were fraudulent. It therefore entered a finding that "the beneficiary knowingly misrepresented a material fact by submitting fraudulent documents in an effort to procure a benefit under the [Immigration and Nationality] Act and the implementing regulations." Betancur R. at 47. Because the AAO's underlying conclusion that Betancur never worked at the Charlot Restaurant was arbitrary and capricious, this finding must also be set aside.

Finally, Betancur's application for an I-485 was denied on December 3, 2009 for

lack of a valid I-140. As the invalidation of Betancur's I-140 has been set aside, the court also sets aside the denial of Betancur's I-485 and remands that application to USCIS for decision.

### B. Costa

The AAO's final decision to invalidate Costa's I-140 was based on three grounds: (1) that it was not clear Pipinelle's had the continuing ability to pay Costa; (2) that Pipinelle's was sold in 2006, which might mean Costa could no longer work there; and (3) that Bucchanio's signature had been forged on the ETA-750 and G-28 accompanying Costa's I-140. The first two reasons might be barred by 8 U.S.C. § 1154(j), the portability provision discussed above. But the court need not address those questions because the AAO's decision can clearly be sustained under its third reason. "When an agency offers multiple grounds for a decision, we will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable." Braintree Elec. Light Dep't v. FERC, 667 F.3d 1284, 1293 n.8 (D.C. Cir. 2012) (quoting BDCPS, Inc. v. FCC, 351 F.3d 1177, 1183 (D.C. Cir. 2003); see also Ore v. Clinton, 675 F. Supp. 2d. 217, 224-25 (D.Mass. 2009) (same).

The AAO concluded that the signature of "Ron Bucchanio" on Costa's ETA-750 was forged based on Bucchanio's letter indicating that it was not his signature. It therefore invalidated the ETA-750 pursuant to 20 C.F.R. § 656.30, which allows USCIS (as delegated by the Department of Homeland Security) to invalidate labor certifications upon a finding of fraud or willful misrepresentation of a material fact.

18

Given Bucchanio's letter, the AAO's finding of fraud was clearly supported by the record and not arbitrary or capricious.

The AAO then revoked Costa's I-140 because it failed to include a valid labor certification (since his ETA-750 was invalid), and because the I-140 application included forged signatures (the "Ron Bucchanio" signatures on the ETA-750 and G-28). Again, given Bucchanio's letter, that decision finds clear support in the record and is not arbitrary or capricious.[12]

The AAO stated in its decision that the forged signatures provided an "independent and alternative basis" for revocation of Costa's ETA-750 and I-140, separate from any issues regarding Pipinelle's. Costa does not attempt to demonstrate that the AAO would not have acted based on the forged signatures if alternative grounds were unavailable. Therefore, the court can affirm the AAO's action based on the forged signatures alone. Braintree, 667 F.3d at 1293 n.8.

Costa raises a variety of other issues, but none have merit. First, he argues that Pipinelle's ceased to exist in 2006, and so never received proper notice of the revocation proceedings as required by 8 C.F.R. § 205.2(b). But 8 C.F.R. § 205.2(a) and § 205.1(a)(3)(iii)(A) specifically allow automatic revocation of employment-based I-140 petitions without notice when the underlying labor certification is invalidated, as it was here. Second, Costa argues that the AAO could not revoke his I-140 without first determining whether the original NOIR was valid. Costa correctly points out that USCIS

---

[12] Because the ETA-750 and I-140 were invalid when they were approved given the forged signatures, they cannot be saved by 8 U.S.C. § 1154(j). See Al Wazzan, 25 I. & N. Dec. 359.

cannot revoke a visa without issuing a valid notice. <u>Matter of Estime</u>, 19 I. & N. Dec.

450, 452 (BIA 1987). However, the AAO's RFE/NDI unquestionably constitutes a valid

notice and cures the errors of the original NOIR. Costa cites no law, and the court has

found none, to indicate that the AAO must first declare the original NOIR invalid before

it can issue its own RFE/NDI and review the I-140 de novo. Finally, the AAO did not

violate Costa's Fifth Amendment right to due process because Costa had no property

interest in his I-140. <u>See Smirnov v. Clinton</u>, 806 F. Supp. 2d 1, 12 (D.D.C. 2011)

("[T]here is no property right in an immigrant visa."); <u>Matter of Ho</u>, 19 I. & N. Dec. at

589; <u>see also United States ex rel. Knauff v. Shaughnessy</u>, 338 U.S. 537, 542-44

(1950) (visa is a privilege, not a right).

After years of waiting for action by USCIS, Costa now finds himself in a difficult

position, apparently not because of any wrongdoing by him but solely because of fraud

and malfeasance by his former lawyer. But because the decision to invalidate Costa's I-

140 is confined to the agency's judgment and that judgment had, in this case, a rational

basis, the court has no choice but to affirm it.

## IV.    Conclusion

For the reasons given, it is ORDERED that the AAO's decision to invalidate

Betancur's ETA-750 and I-140 be set aside, and that those documents be restored to

full validity. It is further ORDERED that the AAO's finding that Betancur knowingly

misrepresented a material fact be set aside, and that the denial of Betancur's I-485 be

set aside. Defendants' motion for summary judgment on Betancur's claims (Docket #

31) is DENIED, and Betancur's cross-motion for summary judgment (Docket # 40) is

ALLOWED to the extent described above. Betancur's matter is REMANDED to the agency for further proceedings consistent with this opinion and for decision on Betancur's I-485 application.

Finally, defendants' motion for summary judgment on Costa's claims (Docket # 34) is ALLOWED, and Costa's cross-motion for summary judgment (Docket # 41) is DENIED. Judgment may be entered accordingly.


     October 12, 2012                         /s/Rya W. Zobel          

           DATE                             RYA W. ZOBEL
                                    UNITED STATES DISTRICT JUDGE